[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION FOR VISITATION PENDENTE LITE
This is an action for dissolution of marriage.
The parties have moved this court for pendente lite visitation orders.
The court heard extensive evidence and testimony over the course of several days regarding visitation. Having heard the parties, the court makes the following findings and orders.
The parties are the parents of one minor child, Brittany, who will be seven on October 19, 1997.
The plaintiff-mother is the custodial parent. On or about September 2, 1997, the plaintiff moved with the child from the marital residence in Watertown to a condominium in Woodbury CT Page 10303 where they currently reside.
The plaintiff is employed on a full time basis at Southbury Training School. She also manages the All About Kids Learning and Day Care Center, LLC, a business started by the parties before the commencement of this action.
The defendant-father resides in Watertown and is a member of the Watertown Police Department.
The parties cannot agree upon a visitation schedule for the father to have visits with the minor child. Previously, he had seen her on an almost daily basis when, pursuant to an agreement between the parties, he would pick her up in the afternoons following school or day care.
Father is seeking an order permitting the child to have overnight visits with him. His request is unacceptable to the mother unless the overnights are limited to weekends.
The plaintiff offered evidence and testimony, including the testimony of the child's psychologist, to the effect that overnight visits on week nights would be disruptive and stressful for the child — especially in view of the fact that she is only just "settling in" to her new home, school and various after school activities.
The plaintiff's initial concerns about week nights seemed to be limited to sartorial issues such as father's inability to comb out his daughter's hair or to match her shoes with her school clothes. Further evidence and testimony touched upon more serious concerns such as the child's need to acclimate herself to her new surroundings both at home and at school.
The normal logistical problems of joint parenting are exacerbated in this case by father's work schedule. As a Watertown Police officer, he customarily works from 6:00 a.m. to 2:00 p.m. and his schedule calls for him to be on duty five days, off for three days, then back on for five days. The non-working days are continually in rotation and are not consistently the same days of the week — such as every Wednesday, Thursday and Friday. The result is an ever-changing, albeit predictable, non-work schedule.
One proposal, suggested by the plaintiff, would be for the CT Page 10304 father to have visitation on (alternate) weekends and would be accomplished by father swopping or trading for weekday duty with other department members, thereby allowing him regular weekends off duty.
Under different circumstances, that proposal might be considered too unilateral and too inequitable for father. However, the court's primary concern is that which is in the best interest of the minor child. Mother and father's preferences are important but secondary to that primary concern.
In this case, mother and father's preferences are further discounted by the bitterness and acrimony they have demonstrated toward each other according to the testimony. Any proposal by one regarding the rights and opportunities of the other is immediately suspect because of the lack of cooperation and good will they apparently have for one another.
Father complains that mother has literally as well as figuratively distanced him from his daughter by relocating to Woodbury. Mother insists that father, by his actions and by those of his family and fellow police officers, has literally driven her and her daughter from Watertown. Neither party is totally credible in the court's opinion.
The court heard testimony that the current policy at the daughter's grade school requires that children who are regularly bused home must present a written authorization to the school on days when a parent is to pick them up. Children who are not taking the bus have a slightly different dismissal time than bus riders. Those students congregate at a different site on the school grounds. They must wait to be united with their parent.
In the instant case, as previously noted, if father were to come for Brittany on a rotating visitation schedule, he would do so on different days every week rather than on set weekdays. That would make the discharge routine even more challenging for a 7-year old bus rider. If the child were to leave school with father during the week, she would also have less opportunity for certain after school activities.
For the foregoing reasons, week night visitation is not in the child's best interest at the present time.
The court enters the following orders. CT Page 10305
The defendant-father is to have visitation with the minor child on Fridays after school until Sunday at 7:00 p.m., at which time she is to be returned to her mother's residence.
The defendant-father shall also have the option of visitation on Tuesdays from after school until 7:00 p.m. at which time the child shall be returned to her mother's residence. If father elects not to visit with the child on a Tuesday, he must notify mother at least 24 hours before Tuesday afternoon.
On Fridays and Tuesdays the father is to be permitted to pick up the child after she is bused from school. If mother has an existing routine for after school supervision of Brittany, other than her home, mother must make arrangements which (1) will get Brittany to her place of supervision (day care, sitter, etc.) and (2) will allow father to remove her from that place of supervision without incident. If he makes the appropriate arrangements with the school and provides 24 hour advance notice to mother, he may pick up the child at school.
The foregoing orders are an attempt by the court to balance the equities of the parties after first addressing the needs of the child. If, during the pendency of these temporary orders, there is any particular day or days when the child's best interests would require a deviation from this routine (e.g., a birthday party or a special event), the parties are free to make ad hoc changes in said orders to accommodate their daughter. Such occasional times when there is a reason to vary the visitation orders will not only test the ability of the parties to cooperate, but will also give the parents a chance to place the child's interests above their own. Their performance at such times will not be lost on the court when the time comes to enter permanent orders of custody and visitation.
The aforementioned visitation schedule shall commence on Friday, October 10, 1997, unless the parties agree otherwise in writing.
The court further orders the defendant to pay to the plaintiff child support in the amount of $125.00 per week, an amount the court finds to be consistent with the child support guidelines based upon the parties' combined net weekly income of $1567.00 — EXCLUSIVE OF OVERTIME OR EXTRA DUTY. Said payments CT Page 10306 are to commence on October 10, 1997. Any claim for additional support based upon additional earning or income is deferred.
JOSEPH W. DOHERTY, J.